THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHN A. KAUFMAN, DEFENDANT-APPELLANT.

Argued February 7, 1955—Decided March 21, 1955.

*Mr. John O. Bigelow* argued the case for the appellant (*Miss Lillian Clawans*, attorney and of counsel).

*Mr. C. William Caruso*, Assistant Prosecutor, argued the cause for the State (*Mr. Charles V. Webb, Jr.*, Essex County Prosecutor, attorney).

The opinion of the court was delivered by

VANDERBILT, C. J. This is a criminal case in which the defendant appeals, upon certification granted, from a judgment of the Appellate Division of the Superior Court, 31 *N. J. Super.* 225 (1954), affirming in part and reversing in part a judgment of conviction entered in the trial court.

On October 5, 1953 the Grand Jury of Essex County returned an indictment in two counts against the defendant, charging that on two different occasions he had obtained the respective sums of $100 and $300 from Mary Briesmeister by false pretenses, contrary to the provisions of *N. J. S.* 2*A*:111–1. The jury returned a verdict of guilty on both counts and the trial judge imposed a general sentence of 18 months in the county penitentiary without allocation of any

part thereof to either count. On appeal the Appellate Division found the first count of the indictment defective and reversed the judgment of conviction on that particular count, but affirmed the conviction under the second count, at the same time holding that the sentence would not be disturbed.

The first count of the indictment charges:

"John A. Kaufman, on the 15th day of June, 1952, at the City of Newark, in the County of Essex aforesaid and within the jurisdiction of this Court, did by a false statement to Mary Briesmeister to wit; that he, the said John A. Kaufman, was going into partnership with a Mr. Lyons in the painting contracting business, whereas in truth as the said John A. Kaufman then knew he was not going into a partnership with a Mr. Lyons in the painting contracting business and the said Mary Briesmeister relying upon the said false statement, to wit: that he, the said John A. Kaufman, was going into partnership with a Mr. Lyons in the painting contracting business, as true and being deceived thereby did then and there give to the said John A. Kaufman money to the value of $100.00, and the said John A. Kaufman did then and there knowingly and designedly by color and means of said false statement obtain from the said Mary Briesmeister money to the value of $100.00 of the goods and ·chattels of the said Mary Briesmeister with intent to cheat and defraud the said Mary Briesmeister of the same, contrary to the provisions of *N. J. S.* 2A:111–1, against the peace of this State, the government and dignity of the same."

In declaring this count defective the Appellate Division held that it charged only a false statement of a present intention as to a future act, and did not constitute a misrepresentation of an existing or past fact required under the statute, citing *State v. Lamoreaux,* 13 *N. J. Super.* 99 *(App. Div.* 1951). This conclusion was undoubtedly correct under *R. S.* 2:134–1, the statute involved in the *Lamoreaux* case. That statute, which was largely drawn from 30 *Geo. II, c.* 24, provided:

"Any person who, knowingly or designedly, by color of any false token, counterfeit letter or writing, or by any false pretense, shall obtain from any person any money, wares, merchandise, goods or chatels or other valuable thing, with intent to cheat or defraud any person of the same, shall be guilty of a misdemeanor."

To fall within the coverage of that statute the false pretense had to relate to a past or existing fact. As stated in *State v.*

*Lamoreaux, supra,* 13 *N. J. Super.* 99, 102 "it must not be promissory in character but must be a representation of something which at the time is untrue"; see *State v. Tomlin,* 29 *N. J. L.* 13, 21 (*Sup. Ct.* 1860); *State v. Pasquale,* 5 *N. J. Super.* 91, 93 (*App. Div.* 1949). The misstatement of one's present state of mind, although sufficient to sustain a civil action in fraud or deceit, was not a statement of an existing fact within this statute, *State v. Lamoreaux, supra,* 13 *N. J. Super.* 99, 103, *Roberts v. James,* 83 *N. J. L.* 492, 497 (*E. & A.* 1912); 2 *Wharton's Criminal Law* (1932 *ed.*) 1698, 1731; *Annotation* 168 *A. L. R.* 833. For criticism of this view see dissenting opinion in *Chaplin v. U. S.,* 81 *U. S. App. D. C.* 80, 157 *F. 2d* 697, 700, 168 *A. L. R.* 828 (*C. A. D. C.* 1946).

 The applicable statute here, however, is *N. J. S.* 2*A*:111-1 which was enacted by our Legislature as a part of *chapter* 344 of the *Laws of* 1951, replacing the aforesaid *R. S.* 2:134-1:

"Any person who, knowingly or designedly, with intent to cheat or defraud any other person, obtains any money, property, security, gain, benefit, advantage or other thing of value *by means of false promises, statements, representations, tokens, writings or pretenses,* is guilty of a misdemeanor." (Emphasis supplied.)

Unlike *R. S.* 2:134-1 this enactment specifically provides that "false promises, statements, representations * * *" shall also constitute a crime. The inclusion of the word "promises" reveals the legislative intention to make criminal false statements as to future, as well as past and present facts. A promise is "an undertaking, however expressed, either that something shall happen, or that something shall not happen, in the future," *Restatement of the Law of Contracts,* § 2(1). It is normally "a stipulation for some future conduct by the promisor," *Loveland Co. Inc. v. Pennsylvania Sugar Co.,* 108 *F. 2d* 603, 606 (4 *Cir.* 1940), *certiorari* denied 309 *U. S.* 683, 60 *S. Ct.* 724, 84 *L. Ed.* 1027 (1940). It is "an express undertaking, or agreement to carry the purpose into effect," *Stewart v. Reckless,* 24 *N. J. L.* 427, 430 (*Sup. Ct.* 1854). A promise is not only an undertaking as to the future. but

it is necessarily also an assertion of an existing state of mind, a present intention to perform. And the statutory crime based upon a false promise must of necessity refer to this existing state of mind, since the only thing which can be false about a promise is the present intention, or existing state of mind, of the declarant not to perform. By including the words "false promises, statements, representations * * *" in this statute the Legislature intended to make criminal the false statement of an existing state of mind. See *People v. Ashley*, 42 *Cal.* 2d 246, 267 *P.* 2d 271, at *pages* 280–281 (*Sup. Ct.* 1954); *Annotation* 168 *A. L. R.* 833, at *page* 841, and cases cited in *Chaplin v. U. S., supra,* 157 *F.* 2d 697, at *page* 700.

In view of this change in the statute it is obvious that the first count of the indictment is valid. It charges that the plaintiff "did by a false statement * * * that he was going into partnership with a Mr. Lyons in the painting contracting business * * *" obtain money from Mary Briesmeister who relied upon the false statement, which was false and known by the defendant to be false, all with the intent to cheat and defraud her. This count charges a false statement and representation as to one's present state of mind, a crime clearly falling within the coverage of *N. J. S.* 2*A*: 111–1.

The defendant contends that the second count of the indictment is defective. There is clearly no merit to this argument. The Appellate Division correctly determined that the charge that the defendant falsely pretended to Mary Briesmeister that he "was in partnership with a Mr. Lyons in the painting contracting business and that he * * * wanted to buy out his partner Mr. Lyons * * *" was an allegation of an existing fact falling within the purview of *N. J. S.* 2*A* :111–1.

The defendant also claims that the court erred in its charge to the jury. In the absence of requests to charge and specific objections to the charge as given, the defendant may not be heard on this point, *R. R.* 1 :5–1. We have, however, read the charge and find it unobjectionable.

Another point raised by the defendant is that if the first count were invalid, the case should be remanded for re-sentencing. In view of our conclusion that the conviction under both counts of the indictment was valid this point becomes academic, but for the guidance of the trial courts we believe that an expression of our views is desirable. In rejecting the defendant's contention the Appellate Division, although finding that the first count of the indictment was defective, held that "where, as here, two distinct offenses were joined in one indictment, the judgment will not be reversed because one of the counts charging a separate offense is fatally defective. The intendment will be that the sentence was pronounced on the valid count, providing the penalty imposed, as here, is authorized by law for conviction on the good count." There have been a number of statements by the courts to this effect; see *Cook v. State,* 24 *N. J. L.* 843, 846 (*E. & A.* 1855); *Mead v. State,* 53 *N. J. L.* 601, 603, 604 (*E. & A.* 1891); *Stephens v. State,* 53 *N. J. L.* 245, 250 (*Sup. Ct.* 1891); *State v. Mararazza,* 93 *N. J. L.* 47, 49 (*Sup. Ct.* 1919), affirmed 94 *N. J. L.* 263 (*E. & A.* 1920); *State v. Grover,* 104 *N. J. L.* 10 (*Sup. Ct.* 1927); *State v. Longo,* 133 *N. J. L.* 301 (*E. & A.* 1945); *State v. Rogers,* 8 *N. J. Super.* 64 (*App. Div.* 1950); *Claassen v. U. S.,* 142 *U. S.* 140, 12 *S. Ct.* 169, 35 *L. Ed.* 966 (1925); *Commonwealth v. Knox,* 172 *Pa. Super.* 510, 94 *A. 2d* 128, 133 (*Super. Ct.* 1953), affirmed 374 *Pa.* 343, 97 *A. 2d* 782 (*Sup. Ct.* 1953). A number of these cases involve either an indictment where the various counts all pertain to the same act or transaction, and where obviously the defendant could be sentenced only under one count, or an indictment where the resulting sentences imposed on the several counts were to run concurrently. Clearly in such cases the defendant had no valid ground for objection if the sentence was allowed to stand even though one of the counts was defective.

There is, however, authority in New Jersey and elsewhere supporting the application of this doctrine to cases such as here where the two counts charge a separate and distinct offense and a general sentence upon both counts has been

imposed. In *Stephens v. State, supra,* 53 *N. J. L.* 245, the indictment contained two counts, the first charging embezzlement, the second larceny. The jury having returned a verdict of guilty on both counts the judge imposed a general sentence. The Supreme Court found that the first count was defective and could not sustain a judgment but held that the second count was valid. Although criticizing the sentencing judge for entering a general sentence instead of a separate sentence upon each count, the court held that the sentence would stand:

> "Is this court constrained to intend that the judgment in question relates, in any degree, to the offence charged in this abortive count? My conclusion is a negation of the proposition. The charge of larceny is well laid in the second count in this indictment, and the judgment is in accord with the punishment for that offence here inflicted; and in such a condition of facts the principle is, that it will be intended that the tribunal pronouncing the sentence disregarded the nugatory finding, and exclusively based its action on such part of it as is valid. It has always been the rule of criminal procedure to sustain a judgment on error where there has been one good count on which it could rest, no matter to what extent it was associated with bad ones. The principle is but the outcome of the maxim touching judicial procedures, *viz., Omnia praesumuntur esse rite acta.* In the case before us the trial court could not rightly punish but for the larceny, and therefore this court must infer that the punishment, notwithstanding the scope of the verdict, was restricted to that misdemeanor of which the defendant had been properly convicted." (53 *N. J. L.,* at *page* 250.)

It does not appear that counsel suggested or the court considered the possibility of remanding the case for resentencing, but rather there was an assumption that the judgment, including of course the general sentence, would have to be either affirmed or reversed, and if reversed a new trial held.

We reject the doctrine of the *Stephens* case as artificial as well as unjust and not consonant with the efforts of our courts to protect the fundamental rights of the accused. In New Jersey two or more separate offenses may now be charged in a single indictment, with a separate court for each, if they "are of the same or similar character * * *,"

regardless of whether they are based on the same act or transaction, *R. R.* 3:4–7. Where, as here, such offenses are separate, we have as a practical matter two separate indictments, and upon conviction under both the trial judge may in his discretion impose the maximum statutory sentence upon each to run either concurrently or consecutively, *State v. Byra*, 128 *N. J. L.* 429 (*Sup. Ct.* 1942), affirmed 129 *N. J. L.* 384 (*E. & A.* 1943), *State v. Roleson*, 14 *N. J.* 403, 410 (1954), *certiorari* denied 347 *U. S.* 947, 74 *S. Ct.* 647, 98 *L. Ed.* 1095 (1954). As a result, if the appellate court finds that one of the counts is defective, a general sentence on both counts cannot be permitted to ₊stand, because in effect such action would constitute a substitution of the appellate court's decision as to the proper sentence upon the valid count for that of the trial judge in whom such power and duty resides, *N. J. S.* 2A:164–1; *State v. Miller*, 16 *N. J. Super.* 251 (*App. Div.* 1951), *certiorari* denied 342 *U. S.* 934, 72 *S. Ct.* 379, 96 *L. Ed.* 695 (1952); *State v. Moore*, 21 *N. J. Super.* 419, 422 (*App. Div.* 1952). It is impossible from the record on the general verdict to determine the amount of punishment which the sentencing judge, who alone has studied the presentence report and familiarized himself with the defendant's past conduct, intended to impose on each count. It may well be that by his general sentence of 18 months the sentencing judge here intended to penalize the defendant on each count, one of which has been declared defective. There is no way of knowing what sentence the trial judge would have imposed, if he had realized that only one of the two counts was valid, *Commonwealth v. Hull*, 296 *Mass.* 327, 5 *N. E. 2d* 565, 571 (*Sup. Jud. Ct.* 1937). The appellate court, therefore, should remand the case for resentencing by the sentencing judge, *R. R.* 1:5–1(*c*). It should also be noted that the difficulty could have been avoided at the trial level if the sentencing judge had imposed a separate sentence upon each count, stating, of course, whether the sentences were to run consecutively or concurrently; and such is, of course, the better practice, *Stephens v. State, supra*, 53 *N. J. L.* 245, 248; *People v. Player*, 377 *Ill.* 417, 36 *N. E. 2d* 729, 732

(*Sup. Ct.* 1941); *Laing v. U. S.*, 145 *F. 2d* 111 (6 *Cir.* 1944); 15 *Am. Jur.* 111.

The judgment of the Appellate Division will be modified in accordance with this opinion, and the judgment of the Essex County Court will be reinstated in full.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.